George PARSONS and Thelma Parsons

v.

Philip BEAULIEU.

Supreme Judicial Court of Maine.

Argued Jan. 14, 1981.

Decided May 6, 1981.

Hart, Stinson & Lupton, P. A., Carl W. Stinson (orally), Bath, for plaintiffs.

Linnell, Choate & Webber, G. Curtis Webber (orally), Auburn, for defendant.

Before McKUSICK, C. J., and WER-NICK, NICHOLS, ROBERTS and CARTER, JJ.

CARTER, Justice.

The plaintiffs, George and Thelma Parsons, sued the defendant, Philip Beaulieu, for damages arising from defendant's breach of a contract to construct a septic system, foundation, and garage on their house lot in Durham. The Superior Court (Androscoggin County) awarded the plaintiffs judgment for $6,000, and the defendant appeals.

In the spring of 1974, George Parsons contacted Philip Beaulieu, who was then plumbing inspector for the town of Durham, to inquire about a plumbing permit for a home the Parsons planned to build on their lot in Durham. The Parsons' lot had heavy clay soil and had failed a percolation

test, but Beaulieu told Parsons that he had the same type of soil on his own property and had built himself a septic system that was functioning without problems.

After several conversations with Parsons, Beaulieu orally agreed in June, 1974, to install a septic system, house foundation, driveway, and a dug well for the 3-bedroom modular home the Parsons were purchasing. The agreed price for this work was $4,800, of which $1,000 was for the septic system. Parsons paid Beaulieu the $4,800 in advance. Beaulieu also agreed to construct a garage with a concrete slab foundation for an additional $2,500 which was paid. The garage was completed in the fall of 1974.

During and after construction, Beaulieu performed extra work not included in the original contracts. When Beaulieu submitted a final bill, the Parsons contested some of his extra charges, arguing that they were included in the original contract prices. Beaulieu then submitted a reduced bill which the Parsons paid, part in December, 1974, and the balance in March, 1975.

In the fall of 1974, the Parsons complained about water in their cellar. Beaulieu installed drainage tile around the house foundation, but the water problem was never completely cured.

In the winter of 1974–75, cracks appeared in the floor and foundation wall of the garage and water leaked in. Beaulieu testified that in 1977 Parsons showed him the cracks in the garage floor but declined Beaulieu's offer to "take care of that for you."

Beginning in the spring of 1975, the Parsons had trouble with the septic system. Effluent was flowing onto the lawn, odors persisted in the backyard, and all the drains in the house were clogged. When the Parsons complained, Beaulieu dug trenches, added extensions, and made various unsuccessful attempts to remedy the septic system. In December 1977, the Parsons called in a site-use evaluator to investigate their

problems with the septic system. He told them that the existing system was completely inadequate, and he designed plans for two proposed replacement systems. In 1978, after commencing this suit, the Parsons installed the less expensive of the two proposed systems, at a cost of $4,000.

In June, 1978, the Parsons filed this suit alleging that Beaulieu had overcharged them and alleging deficiencies in his construction of the septic system, house foundation, and garage. After a non-jury trial, the Superior Court found that the septic system, foundation, and garage were not installed in a workmanlike manner. The Parsons were awarded damages based on the actual cost of replacing the sewer system, and the reasonable cost of the necessary repairs to the foundation and garage. The court also found that by paying Beaulieu's bill the Parsons were estopped from collecting alleged overcharges.[1] Beaulieu appeals, arguing: (1) that the trial court erred in using the cost of replacement as the basis for damages for improper construction of the septic system, and (2) that the trial court erred in awarding any damages for the garage.

## I. *The Septic System*

Beaulieu does not contest the court's finding that the septic system was defective and unworkmanlike, but he contends that the court erred in basing the award of damages on the $4,000 cost of the replacement system actually installed by the Parsons in 1978. Beaulieu argues that this replacement cost was not the proper measure of damages because the replacement system was larger, more elaborate, and more expensive than the original system. Arguing that the new larger capacity system put the plaintiffs in a better position than they would have been if the original system had not malfunctioned, the defendant concludes that damages should be limited to restitution of the $1,000 paid for the original system.

---

1. In their brief, the Parsons ask this Court not only to uphold the trial court's damage award, but also to reverse the trial court's denial of damages for alleged overcharges. Since the

Parsons did not cross appeal, they cannot now attempt to enlarge their judgment. *Littlefield v. Littlefield*, Me., 292 A.2d 204, 208 (1972).

■ Damages for defective performance under a construction contract may be measured either by the difference in value between the value of the performance contracted for and the value of the performance actually rendered, or by the amount reasonably required to remedy the defect. *Wimmer v. Down East Properties, Inc.*, 406 A.2d 88, 92 (1979); 5 A. Corbin, Me., *Contracts* § 1089 (1964). The question of which of these measures is appropriate in this case is not before us. In its pretrial order, the trial court stated that damages would be measured by "the cost of repairs which were necessary to give plaintiffs what they bargained for." Beaulieu did not object to the court's ruling, at trial, that this order was still binding.[2] Therefore, it is too late for Beaulieu to argue that damages should have been measured by anything other than the cost of repairs. The essential questions for the trial court were: (1) what did the parties bargain for? and (2) what was the cost of the necessary repairs?

■ Beaulieu argues that the parties contracted for a limited capacity system because the house would be occupied only by Mr. and Mrs. Parsons and they did not intend to use a clothes washer or dishwasher. At trial, there was expert testimony to show that a properly designed septic system must be based on the number of bedrooms in a house and that its capacity cannot be reduced in accordance with the actual number of occupants or their intended usage. Therefore, if the system had been designed for the limited usage contemplated by the Parsons, it would not have been a lawful and adequate system for their three-bedroom house. Beaulieu testified that he told Mr. Parsons that he would issue him a permit for a septic system and that he had received assistance from the former plumbing inspector to build a similar system for his own family. The Parsons testified that they were not told the septic system would be limited and that Beaulieu had guaranteed that it would pass inspection. This

evidence supports the trial court's finding that the plaintiffs "relied on Defendant's expertise as a builder to install a proper and workmanlike system for them, and never agreed to have an inadequate or unlawful system installed." That a limited capacity system would not have been adequate or lawful is further evidence that the parties did not bargain for such a system.

■ The site-use evaluator consulted by the Parsons testified that the original system had completely failed, was grossly inadequate for their use, was a nuisance, and should be replaced. He stated that the replacement system finally installed was the minimal and least expensive system that could be legally installed on the site. He was absolutely certain that the existing system could not be repaired and he could not legally recommend trying to salvage or expand it. This testimony supports the trial court's findings that the existing system was not repairable and that the $4,000 replacement system was "the least expensive alternative system available to correct the defective system installed by Defendant."

Beaulieu argues that the remedy is nevertheless unfair because it compensates the Parsons for a system they could not have obtained in 1974, and because the Parsons produced no evidence as to the cost of a minimally acceptable septic system available in June 1974. The court's only finding regarding what could have been done in 1974 was that the raised bed system installed as a replacement in 1978 was "not generally known by contractors in the Durham area at the time the original system was installed." The plaintiffs' expert witness testified that, in June 1974, a skillful and prudent contractor would have known that a new plumbing code was to be published in July 1974, and would not have installed a conventional system in a lot that had failed a percolation test, but would have waited to see what alternatives were provided by the new code. Since this testimony shows that a proper and workmanlike installation

**2.** The Parsons objected at trial because they had sold their home after the pretrial order and wanted to offer evidence as to the amount realized on the sale. Beaulieu agreed with the court's ruling that they were bound by the pretrial order.

would have had to comply with the new code, it was proper to compute damages on the basis of systems available under that code. The expert also stated that the only system that would have been available under this new code in the summer of 1974 for an original installation on the Parsons' site would have cost much more than $4,000. In light of that testimony, the court did not err in computing damages on the basis of the less expensive replacement system that later became available.

Although the court found that the replacement system had greater capacity than the original system, the original system was not the adequate functioning system that the parties had bargained for. Since installation of the replacement system was the least expensive means of obtaining what they had bargained for, the plaintiffs were not overcompensated.

## II. *The Garage Floor*

On appeal, Beaulieu argues that: (1) his implied warranty that the garage would be built in a workmanlike manner had expired in June, 1978, when the Parsons served their complaint; (2) the Parsons failed to give him timely notice of the defects in the garage floor; and (3) either the Parsons and Beaulieu reached an accord and satisfaction in March, 1975, barring the Parsons' claim, or the Parsons waived their claim by accepting the garage with knowledge of its defects.

In *Gosselin v. Better Homes, Inc.,* Me., 256 A.2d 629, 639 (1969) we held: "Notwithstanding the absence of an express provision respecting the quality of the work to be done or the manner of its performance in any oral or written construction contract, the law implies therein an undertaking to perform the work in a reasonably skillful and workmanlike manner, ...." Beaulieu contends that because the custom among contractors in the Durham area is to

guarantee their work for no more than one year, the implied warranty that the garage floor would be built in a reasonably skillful and workmanlike manner "expired" one year after the garage was completed. It is true that a contractor does not guarantee that his work will be perfect for all time; he warrants that what he builds will be *constructed* in a reasonably skillful and workmanlike manner. *Wimmer v. Down East Properties, Inc.,* Me., 406 A.2d 88, 93 (1979). Defects which later become apparent are *evidence* that may indicate that the building was not constructed in a reasonably skillful and workmanlike manner. The warranty of workmanlike performance does not expire after an arbitrary time period. Rather, as time passes, it becomes more likely that defects which arise would arise even though the contractor's work was of the quality that would be done by a worker of average skill and competence, and it is therefore less likely that the contractor breached his warranty of workmanlike performance. In the instant case, the evidence shows that the garage floor cracked during the first winter after Beaulieu completed construction. Defects occurring within such a short time period are competent evidence to support the trial court's finding that "the garage was not installed in a workmanlike manner in that a slab was laid without a frost wall ...."

Whether a buyer of new construction must give notice within a reasonable time after he discovers or should have discovered a breach of warranty is an unanswered question in this state.[3] Beaulieu did not raise the issue of notice at trial.[4] By failing to do so, Beaulieu waived his right to argue on appeal that the Parsons' failure to give him timely notice of the breach bars the Parsons from any recovery. *See Vicnire v. Ford Motor Credit Co.,* Me., 401 A.2d

---

**3.** For a discussion of this question, *see Pollard v. Saxe & Yolles Development Co.,* 12 Cal.3d. 374, 115 Cal.Rptr. 648, 525 P.2d 88 (1974).

**4.** The Pretrial Order limited the issues to: "1) what was the agreement of the parties, 2) whether or not there was a breach of agree-

ment (whether work done in workmanlike manner)." This order controls the subsequent course of the action, unless modified at trial to prevent manifest injustice. M.R.Civ.P 16(c)(4) (1979) (replaced by M.R.Civ.P. 16(c)(3), effective Sept. 1, 1980).

148, 153 (1979); *Harrington v. Inhabitants of Town of Garland*, Me., 381 A.2d 639, 642–43 (1978).

■ The trial court found that the Parsons were "estopped" from collecting any alleged overcharges. In December of 1974, Beaulieu presented the Parsons with a bill for $1,495. The Parsons objected; Beaulieu then presented a reduced bill for $1,023.40 which the Parsons finally paid in March, 1975. Beaulieu now argues that this sequence of events resulted in an accord and satisfaction barring the Parsons' recovery for the breach evidenced by the defective garage floor.[5]

■ Assuming, as Beaulieu contends, that the trial court intended to find an accord and satisfaction between the Parsons and Beaulieu, the question of what claims the parties intended to satisfy is presented. The trial court awarded damages for Beaulieu's breach of warranty in constructing the garage, yet also found an accord and satisfaction of some claims because of payment of the reduced bill. Obviously, the trial court must have found that the Parsons' claim for damages from the breach was not among the claims which the parties intended to satisfy. Where an accord and satisfaction is alleged, the question of what the parties intended is one of fact. *Larsen v. Zimmerman*, 153 Me. 116, 121, 135 A.2d 270, 273 (1975). The burden of proof is upon the party asserting that an accord and satisfaction of a particular demand was reached. *Bryson v. Kenney*, Me., 430 A.2d 1102, 1104 (1981).

■ While there is evidence that the Parsons were aware of cracks in the garage floor in the winter of 1974–75, no evidence indicates that they communicated this knowledge to Beaulieu. Neither the original bill nor the reduced bill referred, on its face, to claims for damages; rather, the Parsons' objections to the original bill centered mainly on labor charges connected with "antenna, telephone wire, paint, water heater, spreading gravel, closet." Thus, there is competent evidence supporting the trial court's exclusion of the Parsons' damage claim from those claims upon which the parties reached an accord and satisfaction.

■ Beaulieu also argues that the Parsons waived their claim for damages when they paid the reduced bill in that they then "accepted" the garage with knowledge of its defects. It is alleged and admitted in the pleadings that on or about June 24, 1974, Beaulieu agreed to construct a slab foundation and garage. The garage was constructed in the fall of 1974; the first cracks appeared in the winter of 1974–75. Beaulieu agreed to construct the garage and its concrete slab foundation for $2,500; the reduced bill paid by the Parsons in March, 1975, was for extra work not contemplated in that contract. Thus, there is no evidence to show that payment of the reduced bill was an "acceptance" of the garage.

The entry is:

Judgment affirmed.

All concurring.

---

5. Estoppel, waiver, and accord and satisfaction are all affirmative defenses which if not pleaded affirmatively will be considered waived. M.R.Civ.P. 8(c); *Frost v. Lucey*, Me., 231 A.2d 441, 445 (1967). Beaulieu failed to affirmatively plead any of these defenses. Despite that failure, the trial court found an "estoppel;" the Parsons did not appeal. See n.1 *supra*. We therefore reach the merits of Beaulieu's argument that the trial court erred in not finding the Parsons' claim for damages arising from Beaulieu's unworkmanlike construction of the garage within those claims which the Parsons are "estopped from collecting."