STATE OF MAINE  
KENNEBEC, ss.

SUPERIOR COURT  
CIVIL ACTION  
DOCKET NO. CV-14-155

HAMMOND LUMBER CO.,  
    Plaintiff

v.

**DECISION AND JUDGMENT**

RICKY TRASK dba  
HARDWOOD FLOORS BY RICK,  
    Defendant

    This matter was tried to the Court on January 22 and April 11 and 12, 2016.[1] After the Court has had an opportunity to review the evidence, applicable case law, and the post-trial memoranda filed by counsel on April 25th and May 16th, 2016, the Court makes the following Findings of Fact and Conclusions of Law upon which the **Decision and Judgment** set out below is based:

*Findings of Fact:*

    1. Plaintiff Hammond Lumber Company (hereinafter "HLC") initially filed a five-count Complaint against Defendant Ricky Trask dba Hardwood Floors By Rick (hereinafter "Defendant") on July 25, 2014 seeking an award of damages based upon theories of breach of contract, Unjust Enrichment, Quantum Meruit, Breach of Implied Warranty of Workmanlike Performance, and Negligence. The Complaint was amended on December 19, 2014 to add a claim for misrepresentation.

    2. The claim of HLC against Defendant centers around some construction Defendant performed for HLC in connection with home renovations performed in February of 2013. Specifically, Dunbar Custom Homes (hereinafter "Dunbar") was hired by Don and Jane Bickford (hereinafter "homeowners") as the general contractor to perform certain remodeling/renovations to the Bickford home that Dunbar had originally built over 20 years ago. Dunbar hired HLC to find an installer to remove some tile flooring in the home and replace it with new tile flooring.

---

[1] Counsel had estimated this matter would take two days to hear; however, the Clerk scheduled the matter for one day (January 22nd), and the matter ended up taking three days to hear.

3. HLC retained Defendant to perform the removal of the tile flooring, level the floor, and replace the old tile with new tile. At the time of this job Defendant had performed previous jobs for HLC over the past seven years. As of this job no complaints against Defendant had been lodged previously in connection with work performed by Defendant for HLC. HLC's exhibit 3 is the only evidence of a written contract between the parties.

4. Underneath the new tile floor was a radiant heating system. The new tile was to be a brand known as American Olean.

5. There was evidence presented that the undersigned finds credible that if tile is installed competently it is considerably difficult to remove thereafter.

6. There was evidence presented that the undersigned finds credible that the tile installed by Defendant was not installed competently, as exemplified by evidence including but not limited to the presence of "lippage", the fact that the mortar did not adhere properly to the tiles, multiple tiles were loose, the requested pattern for the tiles was not utilized by Defendant, etc. Several photographs entered into evidence by HLC supports the Court's finding that Defendant did not install the tiles properly.

7. Defendant was made aware of the problems with his installation of the tile. Defendant sent a worker to attempt to rectify the situation complained of, but the worker was unable to satisfy Dunbar.

8. Dunbar considered HLC to be his subcontractor, and the Defendant to be someone who HLC hired to install the new tile floor. The Defendant was an independent contractor, not an employee of HLC.

9. A decision was made mutually by Dunbar, the homeowners, and HLC that all the new tiles installed by Defendant had to be removed and replacement tiles put down. This was done after "test tiles" were removed in various locations, with all found to be defectively installed. The decision to remove all tiles installed by Defendant seems reasonable to the undersigned given the evidence presented concerning Defendant's installation of the tiles.

10. Dunbar charged HLC by the hour to remove the tiles originally installed by Defendant, prepare the area for replacement tile installation, and for the installation of the replacement tiles. It was clear from the evidence presented that the tiles originally installed by Defendant were not bonding to the floor once the work to remove the tiles began.

11. Defendant claims he was pressured into rushing the job by Dunbar, that some of the tiles he installed were defective to begin with, and that the floor was too warm for the tiles to properly adhere to, but that Defendant was "ordered" to lay the tiles by Dunbar even though Defendant complained the floor was too warm.

12. The undersigned finds that Defendant's installation of the tile was not performed in a workmanlike manner and was otherwise performed negligently. The more problematic question for the Court is what is the proper amount of damages to award HLC given Defendant's defective installation of the tiles.

13. The Court rejects Defendant's argument that some of the tile provided to him for installation was defective. It does not appear that Defendant had much, if any, experience in laying this particular type of tile. Moreover, Defendant either did not have or did not use the proper leveling tools/system in order to assure the tiles were "flat" and/or to eliminate any "bowing" in some of the tiles. Finally, Defendant was not forced or coerced into using the tiles in question; if Defendant had an issue with the tiles, he could have, and should have, refused to install them. Defendant chose not to do so.

14. Dunbar gave Defendant an opportunity to rectify the situation; however, after Defendant's worker suggested a way of addressing the problem with the installation of the tiles that Dunbar believed would be ineffectual, Dunbar told the worker "don't bother coming back."

15. Dunbar never called Defendant directly because Dunbar "didn't know if it was my place to call" the Defendant. Dunbar considered HLC to be Dunbar's subcontractor, with Defendant being someone HLC hired to install the tiles.

16. Dunbar charged HLC "by the hour" to remove the tiles Defendant has installed, prepare the area for tile installation, and install the replacement tiles. HLC gave Dunbar a "courtesy credit" of $19,531.59 representing the material costs for the first tile floor put down by Defendant.

17. Approximately 1,100 square feet of tile was to be replaced by Defendant.

18. Although HLC testified that it was much more labor-intensive to remove the tiles that Defendant installed than removing the original tiles, Dunbar testified that he had Defendant's tiles removed "within 90 minutes."

19. The tile was installed by Defendant while the radiant heating system in the floor was on. This undoubtedly affected the installation of the tile, and Defendant knew or should have known that installing the tile while the floor was heated could cause serious problems. The pattern used by Defendant for the tile was not the pattern he was told to use. Defendant's testimony that the homeowners were happy with the "crowned" tile because "that's what they wanted, I guess..." is not credible to the Court.

20. Turning to the individual Counts in the Complaint, the undersigned first addresses Count V, which appears to be an attempt by HLC to plead both intentional as well as negligent misrepresentation in one Count. Regardless, the Court does not find all of the elements of either tort present in this case, certainly not by clear and convincing evidence, and accordingly returns a verdict on

Count V for Defendant. *See Letellier v. Small*, 400 A.2d 371 (Me. 1979); *Langevin v. Allstate Ins. Co.*, 2013 ME 55.

21.  With respect to Counts I and IV, claims for breach of contract and breach of warranty of workmanlike performance/poor workmanship, the Court finds Defendant is liable to HLC because Defendant's performance installing the replacement tiles was substandard, thus breaching the contract.  Breach of the implied warranty of workmanlike performance requires only that a house be constructed in a reasonably skillful and workmanlike manner. The test is one of reasonableness, not perfection, the standard being, ordinarily, the quality of work that would be done by a worker of average skill and intelligence.  *Wimmer v. Downeast Properties*, 406 A.2d 88 (Me. 1979).  The purpose of contract damages is to place the injured parties in the position they would have been in but for the breach, by awarding the value of the promised performance. *See Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646, 654 (Me. 1979); *Restatement (Second) of Contracts § 344(a)*, at 102-03 (1981). Those damages for breach of a construction contract are measured by either the difference in value between the performance promised and the performance rendered, or the amount reasonably required to remedy the defect.  *Parsons v. Beaulieu*, 429 A.2d 214, 217 (Me. 1981). The amount reasonably required to remedy the defect may be measured by the actual cost of necessary repairs. *Id.*; *Wimmer, supra*, at 92.

22.  The Court determines the damages in this case as follows:

a)  The value of the Defendant's work in this case turned out to be zero, and so the monies paid to Defendant should be returned, or $1,375.00 for removing the old tile and $6,875.00 for the rest of Defendant's work;

b) The tiles that Defendant used cost $10,731.59.  No estimate was given by either side for what the tiles were worth after Defendant installed them defectively, thus requiring the tiles to be removed by Dunbar.  Some of the tiles the Court viewed at the request of HLC seemed to be in good shape, others not so much.  The Court finds that it is reasonable to estimate that the value of the tiles after Defendant used them and after they were removed was 25% of their value, or $2,682.89, meaning the tiles declined in value $8,048.69.

c)  HLC's damages may be reduced under the doctrine of mitigation where HLC can be shown to have failed to make reasonable efforts to minimize its damages.  In asserting the affirmative defense of mitigation, a defendant has the burden of proving the mitigation was feasible as well as reasonable. *Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722 (Me. 1983).

d)  HLC gave Dunbar virtually a blank check to remove the tiles Defendant installed and replace them with new tiles.  There was little in the way of evidence that demonstrated the reasonableness of Dunbar's bill to HLC set out in HLC exhibit 40.  The undersigned finds HLC did not exercise reasonable care in mitigating its damages.  The undersigned does find that the kitchen cabinets

had to be removed and then reinstalled due to the tile issue, and that the cost incurred was $1,200.00.

23. HLC also claims damages against Defendant under theories of unjust enrichment and quantum meruit, *see Cummings v. Bean*, 2004 ME 55. Any damages for Counts II and III for unjust enrichment and quantum meruit are included in the amount set forth in ¶ 24 below.

24. Taking all of the above into account, the Court finds Defendant is liable to HLC in the amount of **$17,498.69** along with reasonable costs and interest. **So Ordered.**

The Clerk is directed to incorporate this Decision and Judgment by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Date: 10/3/2016

BY _____

**Robert E. Mullen, Deputy Chief Justice**
**Maine Superior Court**