ATLANTIC SALMON A/S & another[1] vs. MICHAEL P.
CURRAN.

No. 90-P-1135.

Suffolk. December 13, 1991. - May 5, 1992.

Present: WARNER, C.J., SMITH, & IRELAND, JJ.

*Agency*, Liability of agent, Undisclosed agency.

In a civil action, the defendant, who conducted business in the name of
nonexistent corporations, was a principal and not an agent; moreover,
where the defendant did not fully disclose the identity of a corporation
for which he claimed to have acted as agent, he was held personally
liable for contracts he entered into allegedly on behalf of the corpora-
tion. [490-494]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 25, 1988.

The case was heard by *Patrick F. Brady*, J.

*Michael E. Hager* for the plaintiffs.

*Gary W. Cruickshank* for the defendant.

WARNER, C.J. These are the plaintiffs' appeals from a Su-
perior Court judgment for the defendant. The issue presented
is as to the personal liability of an agent who at the relevant
times was acting on behalf of a partially disclosed or uniden-
tified principal. See Restatement (Second) of Agency § 4(2)
& comment g (1958).

The facts are not in dispute, and we draw most of them
from the Superior Court judge's memorandum of decision af-
ter a jury-waived trial and from the parties' stipulation of
facts. The defendant began doing business with the plaintiffs,
Salmonor A/S (Salmonor) and Atlantic Salmon A/S (At-
lantic), Norwegian corporations and exporters of salmon, in
1985 and 1987, respectively. At all times, the defendant

[1]Salmonor A/S.

dealt with the plaintiffs as a representative of "Boston International Seafood Exchange, Inc.," or "Boston Seafood Exchange, Inc." The salmon purchased by the defendant was sold to other wholesalers. Payment checks from the defendant to the plaintiffs were imprinted with the name "Boston International Seafood Exchange, Inc.," and signed by the defendant, using the designation "Treas.," intending thereby to convey the impression that he was treasurer. Wire transfers of payments were also made in the name of Boston International Seafood Exchange, Inc. The defendant gave the plaintiffs' representatives business cards which listed him as "marketing director" of "Boston International Seafood Exchange, Inc." Advertising placed by the defendant appeared in trade journals under both the names "Boston Seafood Exchange, Inc.," and "Boston International Seafood Exchange, Inc." (indicating in one instance as to the latter that it was "Est: 1982"). At the relevant times, no such Massachusetts or foreign corporation had been formed by the defendant or had existed.

On May 31, 1977, a Massachusetts corporation named "Marketing Designs, Inc.," was organized. It was created for the purpose of selling motor vehicles. As of 1983, the defendant was the president, treasurer, clerk, a director, and the sole stockholder of that corporation. The extent of activity or solvency of the corporation is not shown on the record. On October 19, 1983, however, Marketing Designs, Inc., was dissolved, apparently for failure to make requisite corporate filings. See G. L. c. 156B, § 101. On December 4, 1987, a certificate was filed with the city clerk of Boston declaring that Marketing Designs, Inc. (then dissolved), was conducting business under the name of Boston Seafood Exchange (not with the designation "Inc." and not also under the name Boston International Seafood Exchange, Inc.). See G. L. c. 110, § 5.

Salmonor is owed $101,759.65 and Atlantic $153,788.50 for salmon sold to a business known as Boston International Seafood Exchange or Boston Seafood Exchange during 1988. Marketing Designs, Inc., was dissolved at the time the debt

was incurred. In that year, advertising in a trade journal appeared in the name of "Boston Seafood Exchange, Inc.," and listed the plaintiffs as suppliers, and the defendant delivered to representatives of the plaintiffs his business card on which he was described as "marketing director" of "Boston International Seafood Exchange, Inc." On July 8, August 19 and 30, and September 9, 1988, the defendant made checks, imprinted with the name "Boston International Seafood Exchange, Inc.," to one or the other of the plaintiffs as payments for shipments of salmon.

The defendant never informed the plaintiffs of the existence of Marketing Designs, Inc., and the plaintiffs did not know of it until after the commencement of the present litigation on November 25, 1988. Marketing Designs, Inc., was revived for all purposes on December 12, 1988. See G. L. c. 156B, § 108. In the fall of 1988, the defendant had communications with representatives of both plaintiffs, suggesting a "reorganization" or "restructuring" of Boston International Seafood Exchange, Inc., and a preferred stock position for the plaintiffs in exchange for debt.

In the course of his direct testimony, the defendant said: "We do business in seafood, and we're only in seafood. Boston Seafood Exchange is the name we use because it identifies us very closely with the industry and the products that we deal in. 'Marketing Designs, Inc.,' in the seafood business, would have absolutely no bearing or no recall or any factor at all. I picked the name Boston Seafood Exchange, Inc., because it defines where we are, who we deal with, the type of product we're into, and where our specialties are. The reason we have 'Inc.' on there is because also it seemed to me at the time — obviously it seemed to me at the time that it's incumbent upon me to tell people that I'm dealing with and to let them know that they're dealing with a corporation. So, we used 'Inc.' just to notify them; and I signed all my checks 'Treasurer' and so forth."

At trial and on appeal the defendant argues that he was acting as an agent of Marketing Designs, Inc., in 1988 when he incurred the debt which the plaintiffs seek to recover from

him individually. It makes no difference that the plaintiffs thought they were dealing with corporate entities which did not exist, the defendant contends, because they were "aware" that they were transacting business with a corporate entity and not with the defendant individually. The judge essentially adopted the defendant's position. Further, relying on *Barker-Chadsey Co.* v. *W.C. Fuller Co.*, 16 Mass. App. Ct. 1 (1983), the judge placed no significance on the fact of the dissolution of Marketing Designs, Inc., at the time the debt was incurred. The plaintiffs argue that the defendant had no principal, as he was conducting business in the name of non-existent corporations, and he was, therefore, himself the principal, or, in the alternative, that he was acting for a partially disclosed principal (Marketing Designs, Inc.), not known to the plaintiffs, and, consequently, a party to the contracts with the plaintiffs. The judge seems to have treated the case as if it were one involving the defendant as an agent for a partially disclosed principal.[2] Then the analysis went astray.

"If the other party [to a transaction] has notice that the agent is or may be acting for a principal but has no notice of the principal's identity, the principal for whom the agent is acting is a partially disclosed principal." Restatement (Second) of Agency § 4(2) (1958). Here, the plaintiffs had notice that the defendant was purporting to act for a corporate

---

[2]On the evidence in this case, one might view with considerable skepticism the good faith of the defendant's claim that he was in fact acting as the agent of Marketing Designs, Inc. His use of "Inc." in the description of the two fictitious corporations (a criminal violation, see G. L. c. 110, §§ 4A & 26), the methods by which the business was conducted and advertised, the late filing of the business certificate, the purpose of Marketing Designs, Inc., and that in the defendant's own words that name "in the seafood business, would have absolutely no bearing or no recall or any factor at all," the use of only one fictitious name on the doing business certificate, the continuation thereafter of the use of business cards and checks in the other fictitious name of Boston International Seafood Exchange, Inc., and the suggestion to the plaintiffs of the reorganization of that nonentity strongly suggest manipulation and the attempted convenient elusion of personal liability by means of a corporation (then dissolved) never intended to conduct or be responsible for the business of salmon importing. Nevertheless, the judge found that the defendant was not culpable of any relevant "fraud or other reprehensible conduct."

principal or principals but had no notice of the identity of the principal as claimed by the defendant in this litigation. "Unless otherwise agreed, a person purporting to make a contract with another for a partially disclosed principal is a party to the contract." *Id.* at § 321.

It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only that he is acting in a representative capacity, but also the identity of his principal. *Merriam* v. *Wolcott*, 3 Allen 258, 261 (1861). See *Meyers-Leiber Sign Co.* v. *Weirich*, 2 Ariz. App. 534, 536 (1966); *J & J Builders Supply* v. *Caffin*, 248 Cal. App. 2d 292, 295 (1967); *W. W. Leasing Unlimited* v. *Commercial Standard Title Ins. Co.*, 149 Cal. App. 3d 792, 795 (1983); *New England Whalers Hockey Club* v. *Nair*, 1 Conn. App. 680, 683 (1984); *Chambliss* v. *Hall*, 113 Ga. App. 96, 99 (1966); *Lachmann* v. *Houston Chronical Publishing Co.*, 375 S.W.2d 783, 785 (Tex. Ct. App. 1964); *Anderson* v. *Smith*, 398 S.W.2d 635, 637 (Tex. Ct. App. 1965); *A to Z Rental Center* v. *Burris*, 714 S.W. 2d 433, 435 (Tex. Ct. App. 1986).

The judge reasoned that since the defendant had filed a certificate with the city of Boston in December, 1987, that Marketing Designs, Inc., was doing business as Boston Seafood Exchange, the plaintiffs could have discerned "precisely with whom they were dealing by reference to public records before the 1988 credits were extended."[3] But the defendant had dealt with Salmonor, and probably Atlantic, before that date, continued to deal with both under the name Boston International Seafood Exchange, Inc., thereafter, and even proposed to the plaintiffs a corporate restructuring of that nonentity. In any event, it was not the plaintiffs' duty to seek out the identity of the defendant's principal; it was the defendant's obligation fully to reveal it. See *Meyers-Leiber Sign Co.* v. *Weirich, supra*; *W. W. Leasing Unlimited* v. *Commercial Standard Title Ins. Co., supra* at 795-796; *New England Whalers Hockey Club* v. *Nair, supra*; *Stevens* v. *Graf*, 358

---

[3]Of course, had the plaintiffs checked the public corporate records, they would have found that Marketing Designs, Inc., had been dissolved.

Mich. 122, 126 (1959); *Howell* v. *Smith*, 261 N.C. 256, 259 (1964); *Lachmann* v. *Houston Chronical Publishing Co.*, *supra*; *Anderson* v. *Smith*, *supra*; *A to Z Rental Center* v. *Burris*, *supra*.

It is not sufficient that the plaintiffs may have had the means, through a search of the records of the Boston city clerk, to determine the identity of the defendant's principal. Actual knowledge is the test. See *Saco Dairy Co.* v. *Norton*, 140 Me. 204, 207 (1944); *Stevens* v. *Graf*, *supra*; *Cobb* v. *Knapp*, 71 N.Y. 348, 352 (1877); *Howell* v. *Smith*, *supra*; *Anderson* v. *Smith*, *supra*; *A to Z Rental Center* v. *Burris*, *supra*. "The duty rests upon the agent, if he would avoid personal liability, to disclose his agency, and not upon others to discover it. It is not, therefore, enough that the other party has the means of ascertaining the name of the principal; the agent must either bring to him actual knowledge or, what is the same thing, that which to a reasonable man is equivalent to knowledge or the agent will be bound. There is no hardship to the agent in this rule, as he always has it in his power to relieve himself from personal liability by fully disclosing his principal and contracting only in the latter's name. If he does not do this, it may well be presumed that he intended to make himself personally responsible." 1 Mechem on Agency § 1413 (2d ed. 1914).

Finally, the defendant's use of trade names or fictitious names by which he claimed Marketing Designs, Inc., conducted its business is not in the circumstances a sufficient identification of the alleged principal so as to protect the defendant from personal liability. See *Meyers-Leiber Sign Co.* v. *Weirich*, *supra*; *J & J Builders Supply* v. *Caffin*, *supra*; *W. W. Leasing Unlimited* v. *Commercial Standard Title Ins. Co.*, *supra* at 796; *New England Whalers Hockey Club* v. *Nair*, *supra* at 684-685; *Chambliss* v. *Hall*, *supra* at 100; *Saco Dairy Co.* v. *Norton*, *supra*; *Stevens* v. *Graf*, *supra*; *Howell* v. *Smith*, *supra*; *A to Z Rental Center* v. *Burris*, *supra*; Annot., 150 A.L.R. 1303 (1944). Indeed, the defendant's own testimony expresses the impossibility of any ra-

tional connection. Compare *Pinson* v. *Hartsfield Intl. Commerce Center, Ltd.,* 191 Ga. App. 459, 462 (1989).

The judge's reliance on *Barker-Chadsey Co.* v. *Fuller,* 16 Mass. App. Ct. 1 (1983), was of no significance.[4] That case involved a fully disclosed corporate principal and the issue was as to the significance of dissolution of the corporation at the time a debt was incurred on its behalf by an agent and at the time of the appeal.

In view of our disposition, it is unnecessary to consider the plaintiffs' other claim of error.

The judgment is reversed, and new judgments are to be entered against the defendant for Atlantic in the amount of $153,788.50 and for Salmonor in the amount of $101,759.65, both with appropriate interest and costs.

*So ordered.*

---

[4]In his brief, the defendant does not even cite *Barker-Chadsey.*