106 F.3d 383
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Harold PHILIPS, Plaintiff, Appellant,
v.
NORTHROP & JOHNSON, Defendant, Appellee.
 No. 96-1605.
 United States Court of Appeals, First Circuit.
 Jan. 14, 1997.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge]
 Norman Ross on brief for appellant.
 Merrill D. Goldfarb with whom Katz & Goldfarb was on brief for appellee.
 Before CYR, Circuit Judge, and ALDRICH and CAMPBELL, Senior Circuit Judges.
 ALDRICH, Senior Circuit Judge.
 
 
 1
 Plaintiff Harold Philips, desirous of beginning a charter fishing operation out of his home port in St. Maarten, Netherlands Antilles, contracted to buy a boat, offered through a yacht broker in Massachusetts. After the purchase was complete he embarked on the voyage home only to discover she was structurally unsound. He sued the broker, Northrup & Johnson (hereinafter defendant), under the Massachusetts Uniform Commercial Code ("UCC"), Mass. Gen. L. ch. 106, and Mass. Gen. L. ch. 93A, the consumer protection statute. At the close of plaintiff's case the court granted defendant's motion for judgment as a matter of law. Plaintiff appeals. We affirm.
 
 I. Background
 
 2
 Early in 1994, plaintiff began perusing yachting magazines in search of an appropriate boat. He made contact with defendant's employee, George Georges ("Georges"), who provided him with information on several vessels. In September, plaintiff arranged to inspect a used 48-foot Egg Harbor sports fishing boat. On September 26, accompanied by his brother, Georges, and Frederick C. Rhodes ("Rhodes"), the boat's owner, plaintiff engaged in a so-called sea-trial in the Gloucester, Massachusetts harbor. Forthwith he signed a purchase and sale agreement and gave defendant a deposit of $13,000. The agreement gave plaintiff two days from that date to conduct a survey of the boat and accept or reject it, closing to be a month later. It also contained a provision disclaiming any express or implied warranties.
 
 
 3
 Plaintiff testified that when he discussed the need for a survey, Georges discouraged him, urging him instead to accept a survey Rhodes had commissioned a year earlier. Plaintiff agreed but requested that Georges arrange insurance for the voyage home. (How plaintiff thought insurance could be so readily obtained is one of the mysteries in this case.) It was agreed that the closing would not take place in plaintiff's absence.
 
 
 4
 In due course plaintiff wired $117,000, the balance of the purchase price, into defendant's escrow account. Thereafter, in spite of plaintiff's availability and Georges' previous assurances, the closing took place, defendant paying over the money without plaintiff's permission, or his presence. On learning this, and that defendant had not obtained the requested trip insurance, plaintiff expressed his anger but later that evening had dinner with Georges. The next day, without remonstrances, he took possession of the boat and departed for St. Maarten. Four days later, off the coast of Connecticut, the boat, made of fiberglass, began to "flex." Consulting engineers later determined that she was "hopelessly unseaworthy."
 
 II. The Issues
 
 5
 At the start of the two day bench trial, the court determined that the sole issue was whether defendant had the authority to disburse plaintiff's money. Although this would appear to be somewhat less than the allegations raised in the complaint, (and, indeed, some of the evidence received), plaintiff agreed with the court that this was "the main issue." We take "main" to mean "basic." At the same time, because it is difficult to think plaintiff was not woefully taken advantage of overall by defendant, we will deal briefly with other matters.
 
 III. Discussion
 
 6
 A district court's entry of judgment as a matter of law is subject to de novo review. Accordingly, we must determine whether the record, when viewed in the light most favorable to the plaintiff, provides support for a finding in his favor by the trier-of-fact. Schultz v. Rhode Island Hospital Trust Nat'l Bank, N.A., 94 F.3d 721, 726 (1st Cir.1996).
 
 A. UCC Claims
 
 7
 First, Mass. Gen. L. ch. 106, § 2-314 provides an implied warranty of merchantability for all consumer goods or services.[1] Once the implied warranty attaches, any express disclaimer contained in an agreement is void. Mass. Gen. L. ch. 106, § 2-316A.[2] In order to prevail under this claim, however, plaintiff must show that the seller of the boat was "a merchant with respect to goods of that kind." Mass. Gen. L. ch. 106, § 2-314. Therein lies plaintiff's difficulty. Because the statute does not extend to sales between private individuals, Rhodes, the seller of the boat, is beyond its reach. Plaintiff therefore attempts to place defendant in the position of "seller," instead of broker.
 
 
 8
 We have been unable to discover any Massachusetts case law that would allow us to perform this sleight-of-hand. Plaintiff's reliance on the "undisclosed principal" theory is misplaced. The question of whether a party is an undisclosed principal is not, as plaintiff would have it, a question of which party an agent represents at any given point, but rather whether the representation and the principal's identity were disclosed. Atlantic Salmon A/S v. Curran, 32 Mass.App.Ct. 488, 492 (1992). On cross-examination plaintiff admitted that he knew Rhodes was the seller of the boat and that he understood the difference between a broker and a seller. Moreover, the agreement plaintiff signed expressly names Rhodes as the seller as well as naming defendant as both the listing and selling broker. While plaintiff may well have been confused about which party defendant represented at any particular time,[3] it can in no way be said that the identity of a principal was "undisclosed." No reasonable trier-of-fact could find otherwise. We therefore find that defendant is not the seller of the boat within the meaning of § 2-314 and the implied warranty of merchantability is inapplicable.
 
 B. Chapter 93A Claims
 
 9
 Plaintiff maintains that defendant engaged in unfair trade practices prohibited under Mass. Gen. L. ch. 93A by disbursing his money to the seller without permission. The court, without any disagreement on plaintiff's part, treated this as a question of agency and assumed that defendant was plaintiff's agent for the purposes of this transaction.
 
 
 10
 Plaintiff contends that the court erred in finding that plaintiff "waived" both Chapter 93A and UCC claims by having dinner with Georges and taking possession of the boat. What the court actually ruled, however, was that plaintiff's actions (or non-actions) ratified his agent's conduct.
 
 
 11
 Under Massachusetts law, a principal ratifies his agent's unauthorized act if, after discovering it, the principal makes no effort to repudiate. Irving Tanning Co. v. Shir, 295 Mass. 380, 384 (1936). Ratification may be express or implied. Inn Foods, Inc. v. Equitable Co-operative Bank, 45 F.3d 594, 597 (1st Cir.1995). Plaintiff admitted that, when given the closing papers after the fact, he made no attempt to undo defendant's actions and even had a pleasant dinner with Georges that evening. Rather than demanding his money back, he took the boat the next day, without insurance, and departed on the first leg of his trip. Based on this conduct we cannot say that the ruling of ratification was erroneous. Plaintiff presents a sympathetic case, but his failure to act on his dissatisfaction is fatal.
 
 
 12
 Affirmed.
 
 
 
 [1]
 Section 2-314 provides in relevant part:
 (1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.
 
 
 [2]
 Section 2-316A provides in relevant part:
 Any language, oral or written, used by a seller or manufacturer of consumer goods or services, which attempts to exclude or modify any implied warranties of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or exclude or modify the consumers' remedies for breach of those warranties, shall be unenforceable.
 
 
 [3]
 We note that the plaintiff did not argue here or below the theory that dual representation requires an agent representing adverse parties to notify both parties of the representation and obtain consent. Jerlyn Yacht Sales, Inc. v. Wayne R. Roman Yacht Brokerage, 950 F.2d 60, 64 n. 1 (1st Cir.1991)