**ESTATE OF Samuel SALIBA, et al.**

v.

**John DUNNING.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 24, 1996.
Decided Aug. 16, 1996.

Edward C. Russell, Russell, Lingley & Silver, Bangor, for appellant.

Norman S. Heitmann, Bangor, for appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

John Dunning appeals from a judgment entered in the Superior Court (Hancock County, *Mead, J.*) affirming a judgment of the District Court (Ellsworth, *Staples, J.*) finding him personally liable for rent owed to Samuel[1] and Ruth Saliba. On appeal Dunning contends that no competent evidence supports the court's finding that he should be held personally liable for the payment of rent associated with the rental of a building owned by the Salibas and occupied by Dunning's business. We disagree, and we affirm the judgment.

## I.

In January of 1988 Samuel and Ruth Saliba purchased a warehouse in Bangor occupied by The R.B. Dunning Company, an industrial supply wholesaler. The R.B. Dunning Company had been the building's only tenant since approximately 1985 and had rented the building from its former owner without a written lease. John Dunning was the company's sole officer and was responsible for the management and operation of the business.

Soon after purchasing the building the Salibas met with John Dunning to discuss the company's continued tenancy. It was agreed that the rent would continue to be $1,500 payable on the first of each month. Because there had never been a written lease with the previous landlord, the Salibas decided to "go along" with this arrangement and the terms of the arrangement for the company's use of the Salibas' building were never reduced to a written contract.

The monthly rental payments were made through August of 1992. Then, with the company's business faltering, there were no rental payments from September of 1992 through July of 1993 when the company failed and vacated the warehouse.

The Salibas filed suit against Dunning personally in January of 1994 seeking $14,800 for rent in arrears and $800 for amounts expended in cleaning the warehouse after the company had vacated the building. The dispute focused on the liability for the rent, with the Salibas seeking to hold Dunning personally liable for the rent and Dunning attempting to cast the amounts owed as a debt of the now-bankrupt company that bore his family name. At trial, Ruth Saliba testified that upon notifying Dunning of their purchase of the warehouse, Dunning had agreed to continue to pay rent to the Salibas in the manner he had to the building's previous owners. In September of 1991, after Dunning was tardy in paying that month's rent, he assured the Salibas that he "would personally take care of the rent if anything happens." Ruth Saliba further testified that this promise was repeated in various ways several times between the fall of 1991 and the summer of 1993. In contrast, Dunning testified that he never made any representation to the Salibas that he would be personally liable for the rent.

After recognizing that the thrust of the Salibas' pleading was that Dunning had agreed to guarantee the rent personally at some point after the Salibas originally agreed to rent the building to the company, the court found that the Salibas had submitted evidence, without objection, that Dunning had agreed to be personally liable for the rent at the outset of their agreement.[2] The court, *sua sponte*, amended the Salibas' pleadings to conform to this evidence and made the following findings:

> Sometime in January 1988, Plaintiff Ruth Saliba and her husband met with Defendant John Dunning to discuss continuing the occupation of that business on the property.... Defendant John Dunning agreed expressly or by reasonable inference to be personally liable for the rent, or

---

1. Samuel Saliba died during the pendency of this suit and the court, pursuant to M.R.Civ.P. 25, substituted his estate as a party to this action.

2. M.R.Civ.P. 15(b) states that "[w]hen issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised by

the pleadings." The issue of whether Dunning had agreed to be personally liable for the rent at the outset of the agreement was tried with Dunning's implied consent because he did not object to the introduction of testimony related to this issue. *See Doane v. Pine State Volkswagen, Inc.*, 377 A.2d 481, 484 n. 2 (Me.1977).

that if he was acting as agent for his principal (the corporation), he failed to disclose that and Plaintiffs reasonably understood that he was agreeing to be personally liable for the rent.

．　　．　　．　　．　　．

Defendant repeatedly made promises that the rent would be paid and these promises were reasonably understood by Plaintiffs to be a reaffirmation of his original and personal promise to pay the rent.

Based on these factual findings, the court granted judgment in favor of the Salibas in the amount of $14,800. Dunning appealed to the Superior Court, which affirmed, and this appeal followed.

## II.

■ When the Superior Court acts as an intermediate appellate court we directly review the trial court's findings. *Department of Human Servs. v. Roy,* 585 A.2d 813, 816 (Me.1991). We will disturb the findings of the court only if they are clearly erroneous. *FDIC v. Proia,* 663 A.2d 1252, 1254 (Me.1995). Because Dunning made no motion for findings of fact pursuant to M.R.Civ.P. 52(a), we assume that the trial court found for the Salibas on all factual issues necessarily involved in its decision and we review the record to determine whether those assumed findings are supported by the evidence in the record. *Strout v. Gammon,* 659 A.2d 284, 286 (Me.1995).

■ An agent who makes a contract for an undisclosed principal or a partially disclosed principal will be liable as a party to the contract. RESTATEMENT (SECOND) OF AGENCY §§ 321, 322 (1958). Hence, "[i]n order for an agent to avoid personal liability on a contract negotiated in his principal's behalf, he must disclose not only that he is an agent but also the identity of the principal, . . . . [W]ithout that, the party dealing with the agent may understand that [the agent] intends to pledge his personal liability and

responsibility in support of the contract and for its performance." 3 AM.JUR.2D *Agency* § 327 (1986). A third party with whom the agent deals is not required to inquire whether the agent is acting for another. *Jensen v. Alaska Valuation Serv., Inc.,* 688 P.2d 161, 163 (Alaska 1984).[3] Finally, neither the use of a corporate name, see *Saco Dairy Co. v. Norton,* 140 Me. 204, 206–07, 35 A.2d 857, 858 (1944), nor the use of corporate checks, see *Jensen v. Alaska Valuation Serv., Inc.,* 688 P.2d at 164, is necessarily sufficient to notify a third person of a corporate principal.

■ The record supports the trial court's conclusion that Dunning did not make clear the fact of his agency to the Salibas at the time he entered into a contract with them to continue his tenancy in their building, and he thereby led the Salibas reasonably to believe that he was personally promising to pay the rent. Dunning testified that the company had been a family-run business since its founding and that he had been almost entirely responsible for its continued operation since 1989 or 1990. Ruth Saliba testified that *"Mr. Dunning* had rented [the building] from [the previous owner] for years . . ." (emphasis added). Both Saliba and Dunning testified that Dunning informed the Salibas during their initial meeting that he had never had a written lease with the previous owner, that he did not have any problems with this arrangement, and that he paid his rent on time. None of these assurances revealed that Dunning was acting as an agent of the company. In fact, there is no testimony from Saliba or Dunning that Dunning informed the Salibas at any time during this initial meeting, or at any other point in their relationship, including those instances when he reaffirmed his promise to pay the rent, that he was acting solely in his capacity as an officer of The R.B. Dunning Company. In light of this testimony, we cannot say that the court clearly erred in finding that Dunning did not provide the Salibas with notice of his agency relationship at the outset of the

3. A third party will be held to have notice of the agency relationship only if "he knows [about it], has reason to know about it, should know [about] it, or has been given notification of it." RESTATEMENT (SECOND) OF AGENCY § 9 (1958). Whether or not an agent's conduct in a particular case

amounts to a disclosure of the agency relationship, *i.e.* notifies the third party of the identity of the agent's principal, depends upon the facts of the specific case. RESTATEMENT (SECOND) OF AGENCY § 9 cmt. f (1958).

parties' contractual relationship, and that he therefore incurred personal liability for the rental amounts.

Dunning further complains that the court failed to address his Statute of Frauds defense. As noted above, the court found that Dunning was personally liable for the rent from the outset because of his failure to make clear his agency relationship. In effect, the court found that Dunning and the Salibas had entered into a month to month oral contract for the lease of the warehouse. Such an agreement *can be* performed in less than a year, *is not* a contract for the sale of land and does not even remotely implicate any of the other categories of agreements requiring a writing pursuant to the Statute of Frauds to be enforceable. 33 M.R.S.A. § 51 (1988). Accordingly, this contract was not subject to the Statute of Frauds. *Id.*

The entry is:

Judgment affirmed.

All concurring.