1997 ME 153

## MAINE FARMERS EXCHANGE

v.

## Joseph C. McGILLICUDDY et al.

Supreme Judicial Court of Maine.

Submitted on Briefs June 23, 1997.

Decided July 18, 1997.

Brent A. York, Phillips, Olore & Dunlavey, Presque Isle, for plaintiff.

Thomas J. Pelletier, Solman & Hunter, Caribou, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1] Joseph C. McGillicuddy and Donald J. McGillicuddy appeal from the judgment entered in the Superior Court (Aroostook County, *Pierson, J.*) in favor of Maine Farmers Exchange's (MFX), following a jury waived trial, on its complaint seeking damages for the McGillicuddys' alleged breach of warranty of the contract between the parties. The McGillicuddys contend the court erred by finding that they breached both the express and implied warranties of their contract to sell seed potatoes to MFX,[1] by its assessment of damages, and by determining that Joseph McGillicuddy and Donald McGillicuddy were jointly and severally liable for the damage suffered by MFX. We disagree and affirm the judgment.

[¶ 2] The record discloses the following facts: MFX is in the business of buying potatoes from local growers and selling them to others. On November 14, 1991, MFX entered into a contract with Joseph McGilli-

---

1. Because we conclude the trial court did not err by its finding that an express warranty existed and the McGillicuddys breached the express warranty, we need not address the McGillicuddys' contention regarding the implied warranty.

cuddy to purchase 400 weight Norwis Foundation Generation # 1 certified seed potatoes for resale to Loy A. Sawyer of Mineral Point, Pennsylvania. Joseph McGillicuddy was aware that the potatoes were for resale and that the potatoes were expressly warranted to be seed potatoes as ordered. The memorandum of sale executed by the parties also contained an express warranty that provided as follows: "Seller guarantees this contract grade at destination and agrees to comply with seed potato regulations of state of destination." Although Joseph McGillicuddy signed the contract, the potatoes were furnished by Donald McGillicuddy in April 1992.

[¶ 3] Sawyer, who has farmed for twenty-six years and raises Norwis potatoes, noticed problems during the growing season that included excessive vines and difficulty in killing the vines for harvest. He also noticed that the potato blossoms differed from his normal crop, that the crop matured very late, and that the potato skins cracked shortly after exposure to the air.

[¶ 4] Sawyer notified MFX of the difference in the color of the blossoms, and later notified MFX that the vines were harder to kill and the harvested potatoes had large air cracks. Peter LaVasseur, an employee of MFX, went to Pennsylvania in October of 1992 to inspect the potatoes. He determined that the potatoes were comprised of two varieties, Allegany and Norwis, and were unmarketable. This assessment was confirmed by Ronald Hostetler, an agricultural extension agent with the Cooperative Extension Service at Pennsylvania State University, in March of 1993. MFX was unsuccessful in attempting to help Sawyer market his crop. Lavasseur returned to Maine with two fifty-pound bags and two twenty-pound bags of potatoes and left them with Donald McGillicuddy, who confirmed that the potatoes were bad.

[¶ 5] MFX filed the present complaint on March 17, 1994, seeking damages from the McGillicuddys in the amount it had paid Sawyer on his claim against MFX. Although Donald McGillicuddy denied responsibility for intermixing the two varieties and blamed Sawyer's crop failure on improper farming methods, he testified at the trial that his own

crop, planted from the same kind of seed potatoes sold to Sawyer, failed to pass a state inspection on July 22, 1992, because of an unacceptable mix of potatoes. The trial court found, *inter alia*, that: Joseph McGillicuddy had signed the contract with MFX; he does the selling for his father, Donald McGillicuddy; the seed sold to MFX, and resold to Sawyer, contained a mixture of Norwis and Allegany; and that MFX incurred a loss of $34,948.13 as a result of the McGillicuddys' breach of both express and implied warranties of their agreement. From the joint and several judgment entered against the McGillicuddys, they appeal.

## I.

[¶ 6] The McGillicuddys contend that the court erred by entering a judgment in favor of MFX. They argue, pursuant to 11 M.R.S.A. § 2–316(3)(b), that MFX's inspection of the potatoes at the time of shipment obviated all warranties. We disagree.

[¶ 7] Express warranties by the seller pursuant to 11 M.R.S.A. § 2–313 (1995) are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Comments to this provision of the code suggest that the requirement that the affirmation become part of the "basis of the bargain" is meant to continue the uniform sales act requirement that the purchaser must show reliance on the affirmation in order to make out a cause of action for a breach of warranty. *Id.* (comment) (citing R.S.1954, c. 185 § 12) (1954). Whether certain language creates an express warranty and whether that warranty was breached are factual findings that will not be set aside unless they are "clearly erroneous." *Faulkingham v. Seacoast Subaru, Inc.*, 577 A.2d 772 (Me.1990); *Cuthbertson v. Clark Equipment Co.*, 448

A.2d 315 (Me.1982). We will "reverse a finding of fact for 'clear error' only when there is no competent evidence in the record to support the finding." *H.E. Sargent, Inc. v. Town of Wells,* 676 A.2d 920, 923 (Me.1996) (citation omitted).

[¶ 8] The evidence at the trial established that MFX informed Joseph McGillicuddy both of the particular kind of seed desired and the particular purpose for which the seed was required. The seed and the variety was a substantial part of the bargain. The memorandum of sale is sufficiently direct and positive to create an affirmation of fact that the seed potatoes were to be Norwis potatoes. The evidence also demonstrates that the potato seed sold to MFX, and resold to Sawyer, contained a mixture of Allegany and Norwis potatoes. Accordingly, the trial court's findings that an express warranty existed and that the McGillicuddys breached that warranty was not clear error. *Cuthbertson v. Clark Equipment Co.,* 448 A.2d 315, 320 (Me.1982); *Henderson v. Berce,* 142 Me. 242, 252, 50 A.2d 45, 50 (1946).

[¶ 9] The McGillicuddys' reliance on 11 M.R.S.A. § 2–316(3)(b)2[2] to support their contention that no warranties survived the sale is misplaced. Pursuant to that section, an inspection before acceptance would not exclude an express warranty. Contrary to the McGillicuddys' contention, the court did not err by finding that their breach of warranty was the proximate cause of Sawyer's loss. Sawyer testified that 85% of his crop were Allegany potatoes and were so badly damaged as to be unusable. The Allegany potatoes were unusable because Sawyer harvested them earlier than he should have, mistakenly believing that they were Norwis potatoes. The court's finding that the McGillicuddys' shipment of a varietal mixture was the proximate cause of Sawyer's damages is not clearly erroneous. *Greenstreet v. Brown,*

623 A.2d 1270, 1272 (Me.1993) (citation omitted).

## II.

[¶ 10] The McGillicuddys next contend that the court erred by finding the McGillicuddys jointly and severally liable. They contend that MFX should have been aware that Joseph McGillicuddy was acting as an agent for Donald McGillicuddy. We disagree. In *Estate of Saliba v. Dunning,* 682 A.2d 224, 226 (Me.1996), we stated "[a]n agent who makes a contract for an undisclosed principal or a partially disclosed principal will be liable as a party to the contract." Hence "[i]n order for an agent to avoid personal liability on a contract negotiated in his principal's behalf, he must disclose not only that he is an agent but also the identity of the principal, ...." *Id.* (Citation omitted). The trial court's finding that MFX was unaware of Joseph acting on behalf of his father Donald is a factual finding that is reviewed for clear error. *Id.*

[¶ 11] The evidence demonstrates that Joseph McGillicuddy signed the memorandum of sale without disclosing that he was an agent or that Donald McGillicuddy was the principal. LaVasseur testified that when negotiating the contract he thought he was purchasing Joseph McGillicuddy's potatoes. The court, therefore, did not err by finding Joseph McGillicuddy jointly and severally liable for the judgment.

## III.

[¶ 12] The McGillicuddys contend that the court erred in its calculation of damages. We disagree. The appropriate measure of damages for the breach of an express warranty is set forth in 11 M.R.S.A. § 2–714(1995), which provides in part:

(3) Notwithstanding subsection (2)

....

(b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him....

2. 11 M.R.S.A. § –316 provides, in pertinent part:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be in writing and be conspicuous....

(1) Where the buyer has accepted goods and given notification (section 2–607, subsection (3)) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

*Id.* The comment to that subsection states, "The 'non-conformity' referred to in subsection (1) includes ... breach[] of warrant[y].... In the case of such non-conformity, the buyer is permitted to recover for his loss 'in any manner which is reasonable.'" *Id.* (comment 2). The assessment of damages is generally within the province of the fact finder. We will not substitute our judgment for that of the fact finder unless it is the product of bias, prejudice, improper influence, or was reached under a mistake of law or in disregard of the facts. *S.H. Nevers Corp. v. Husky Hydraulics, Inc.*, 408 A.2d 676, 680 (Me.1979) (citation omitted). There was evidence that Sawyer incurred an actual loss of $36,143 and that MFX incurred a loss of $34,948.13 as a result of the breach of express warranty by the McGillicuddys in supplying seed to MFX. Thus, the award is fully supported by the evidence.

The entry is:

Judgment affirmed.

