2007 ME 150

Leah TREADWELL et al.

v.

J.D. CONSTRUCTION CO. et al.

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 27, 2007.

Decided: Dec. 20, 2007.

---

Roger G. Innes, Esq., Mt. Desert, ME, for appellants.

Jeffrey C. Toothaker, Esq., Toothaker & Chong, Ellsworth, ME, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1]   Leah and William Treadwell[1] appeal from a judgment of the Superior Court (Hancock County, *Mead, J.*), awarding them damages against J.D. Construction Co., Inc. and JCDER, Inc., but finding that they had not proven that Jesse Derr was personally liable for the damages. The Treadwells assert that the Superior Court erred in its analysis of the personal liability issue.  JCDER, Inc. cross-appeals, arguing that the Superior Court erred in awarding damages for the cost of sheetrock installation.  We vacate the portion of the judgment addressing Jesse Derr's personal liability, and amend the damages award regarding the sheetrock installation.

## I.  CASE HISTORY

[¶ 2]   In 2004, Leah and William Treadwell filed a complaint against Jesse Derr and J.D. Construction Co., Inc., alleging that Derr and his corporation failed to complete their home building project in a workmanlike manner, requiring them to hire their own contractors to fix and finish the project.   Count I of the complaint alleged breach of contract;  Count II alleged breach of contract/express warranties;  Count III alleged breach of implied warranty;  Count IV alleged unfair trade practice;  and Count V alleged negligence/unworkmanlike construction.

[¶ 3]   Derr and J.D. Construction answered and filed a counterclaim, as JCDER, Inc., d/b/a J.D. Construction Co., Inc., alleging that the corporation had performed and that the Treadwells owed JCDER approximately $16,000 for labor and supplies.[2]

[¶ 4]   The record of the bench trial includes the following evidence relevant to this appeal.   In the early 1990s, Derr created a corporation to operate his construction business called JCDER, Inc.[3]  At some point, Derr began referring to the corporation as J.D. Construction Co., Inc., but no corporation by that name was ever created.   JCDER, Inc. remained the official name for purposes of organization and filing with the Secretary of State.

[¶ 5]   Leah and William Treadwell decided to build a home and began looking for a contractor.   A neighbor referred them to Jesse Derr.  The Treadwells brought their plans to Derr's office to get a quote and left them with an employee, Jane Veinot.   They did not meet with

---

1.  William Treadwell died during the course of this action.

2.  Derr and J.D. Construction Co., Inc., also filed a cross-claim against a subcontractor hired by Derr to frame the Treadwells' home.

Although the subcontractor remained a party to the action, he was discharged in bankruptcy.

3.  JCDER, Inc. was incorporated in 1994.

Derr, but received a quote from him in the mail.

[¶ 6] The Treadwells signed a contract with J.D. Construction. Work was to commence in May 2003. Derr signed the contract, and his signature appears above the following designation on the agreement:

J.D. Construction Co., Inc.

By: Jesse Derr

The Treadwells were unaware of the existence of JCDER, Inc. when they signed the agreement. Their contacts regarding the contract were with Veinot.

[¶ 7] The total contract price was $122,775, including $111,750 for structure, and $11,025 for installing the sheetrock.[4] Derr testified that the Treadwells were going to hire their own contractor to install the sheetrock (or drywall), but wanted a quote from Derr in case they decided to have him do it. The Treadwells disputed this, and stated that they had entered into a contract with Derr to install the sheetrock.

[¶ 8] William Treadwell testified that he spoke with Derr twice at the worksite, just as they were breaking ground.[5] The Treadwells, who visited the site almost daily, never saw Derr again, even though they tried many times to contact him. They spoke to Veinot often, but she would tell them that Derr was at another site. Derr had hired subcontractors to do the work on the Treadwells' property.

[¶ 9] Around Thanksgiving 2003, the Treadwells visited the site and found that Derr had abandoned the job with the house unfinished. Veinot told them that the company was not making any money on the job, so the company was not going to complete the construction.[6] In total, the Treadwells paid Derr approximately $91,000 before their relationship ended.

[¶ 10] The Treadwells hired new contractors to fix and finish the project, and they paid significant sums for the additional work. This included hiring a drywall contractor to complete the sheetrock installation at a cost of $21,633. There were many problems with the structure that made the sheetrock more difficult to install. These problems included twisted studs, missing nailers and lumber, which the drywall contractor had to replace.

[¶ 11] Derr admitted that his construction company was the general contractor on the Treadwells' project and was responsible for assuring that the job went smoothly and correctly. None of the documents the Treadwells received from J.D. Construction indicated that the company's real name was JCDER, Inc.[7] Derr never filed with the Secretary of State a statement of intention to do business under a d/b/a or an assumed name, and he admitted that J.D. Construction did not exist as a corporate entity.

[¶ 12] At the close of all testimony, the parties agreed to submit written closing arguments. The Treadwells argued that "any judgment for damages should be assessed against Jesse Derr personally."

[¶ 13] The court entered judgment in September 2006. The court found in favor of the Treadwells on all counts of their

---

4. After they signed the contract, the Treadwells sought a change in the plans, which increased the contract price by $4598.88, making the total contract price $127,373.88. Another change caused the contract price to be reduced by $2500.

5. The court found that the Treadwells met Derr at a mediation session after this action was filed.

6. Derr testified that the Treadwells fired him.

7. Derr testified that the contracts he uses now state JCDER, Inc., d/b/a J.D. Construction Co.

complaint against J.D. Construction, concluding that the construction work was "extremely inadequate." The court found that the Treadwells were entitled to damages of $66,783.89 for repair of the defective work and for costs incurred in completing aspects of the contract for which they had already paid. In a footnote, the court noted certain costs it was not including in the damages award, because they involved modifications to the plans that the parties had not agreed to in the original contract.

[¶ 14] On the unfair trade practice count, the court ordered J.D. Construction to pay the Treadwells' attorney fees and costs. The court also granted judgment in favor of the Treadwells on Derr and JCDER, Inc.'s counter-claim.

[¶ 15] With respect to the claims against Derr individually, the court held that it could not conclude:

> by any standard of proof, that Jesse Derr is personally liable for the corporation's obligation here. The contract specifically provides that the Plaintiffs were contracting with a corporation (although the corporation was named in it's "dba" form). Since Jesse Derr never dealt with the Plaintiffs—indeed he was nowhere to be found during the entire process from estimate to conclusion—the Plaintiffs are hard pressed to argue that they thought they were contracting with him personally.

[¶ 16] Thereafter, J.D. Construction filed a motion for reconsideration and further findings of fact, challenging the court's calculation of damages. The Treadwells filed their own motion for additional findings of fact and conclusions of law. They asked the court to decide whether J.D. Construction existed at the time of the contract between the parties and to state the facts and legal authority for not holding Derr personally liable for

their damages. The court denied all motions. This appeal and J.D. Construction's cross-appeal followed.

## II. LEGAL ANALYSIS:
## THE APPEAL

[¶ 17] The Treadwells argue that the trial court should have awarded damages against Derr individually since he signed the contract for a non-existent corporation. In the alternative, they contend that the trial court should have pierced the corporate veil and held Derr responsible because he failed to disclose the existence of JCDER, Inc.

[¶ 18] We review a trial court's judgment after a non-jury trial for errors of law and clearly erroneous findings of fact. *See, e.g., Advanced Constr. Corp. v. Pilecki,* 2006 ME 84, ¶ 10, 901 A.2d 189, 194–95. The question presented to us is whether, as a matter of law, an individual who signs a contract, purporting to act on behalf of a corporate entity that he knows does not exist, becomes personally liable for damages arising from failure to properly perform under that contract.

[¶ 19] Maine law informs the issue, as Derr's failure to notify the Secretary of State of his intent or practice to use "J.D. Construction, Co., Inc.," as an assumed name or trade name, violated the Maine Business Corporation Act, 13–C M.R.S. § 404 (2006) (requiring execution and delivery of a statement to the Secretary of State identifying the corporate name and intention to transact business under an assumed name).

[¶ 20] We have stated that "an agent who makes a contract for an undisclosed principal or a partially disclosed principal will be liable as a party to the contract." *Maine Farmers Exch. v. McGillicuddy,* 1997 ME 153, ¶ 10, 697

A.2d 1266, 1269 (quoting *also Estate of Saliba v. Dunning*, 682 A.2d 224, 226 (Me. 1996)). "[I]n order for an agent to avoid personal liability on a contract negotiated in his principal's behalf, he must disclose not only that he is an agent but also the identity of the principal." *Id.* (quoting *Estate of Saliba*, 682 A.2d at 226). The term "partially disclosed" principal is synonymous with "unidentified" principal. RESTATEMENT (THIRD) OF AGENCY § 1.04 cmt. b (2006). "A principal is unidentified if, when an agent and a third party interact, the third party has notice that the agent is acting for a principal but does not have notice of the principal's identity." RESTATEMENT (THIRD) OF AGENCY § 1.04(2)(c) (2006). To avoid liability for the agent, the third party must have *actual* knowledge of the identity of the principal, and does not have a duty to investigate. *Saco Dairy Co. v. Norton*, 140 Me. 204, 207, 35 A.2d 857, 858 (1944).

[¶ 21] In *Maine Farmers Exchange*, the son of a potato seller signed a contract with a distributor for a certain grade potato. 1997 ME 153, ¶ 2, 697 A.2d at 1267–68. The father/seller furnished the potatoes, which turned out to be the wrong grade. *Id.* ¶¶ 2–4, 697 A.2d at 1267–68. In an action by the distributor against the father and son, the trial court found them to be jointly and severally liable. *Id.* ¶ 10, 697 A.2d at 1269. They appealed the finding of joint and several liability, arguing that the distributor should have been aware that the son was acting as an agent for his father. *Id.* We affirmed that finding because the son did not disclose that he was an agent for his father, and the distributor believed he was buying potatoes from the son. *Id.* ¶ 11, 697 A.2d at 1269.

[¶ 22] In *Saco Dairy Co.*, the defendant was an agent of a corporation operating under the trade name, "Breakwater Court." 140 Me. at 205, 35 A.2d at 857–58.

The plaintiff, who sold milk products to Breakwater Court for a number of years, sought recovery for unpaid bills against the agent in his personal capacity. *Id.* at 205–06, 35 A.2d at 857–58. The sole issue raised by the parties was whether the defendant had disclosed his agency relationship to the plaintiff. *Id.* at 206, 35 A.2d at 858. The defendant argued that the use of a trade name was sufficient to put the plaintiff on notice that he was acting on behalf of a corporation. *Id.* Noting that "[t]he fact that a contract is negotiated by an agent, under a trade name, is not of itself a sufficient disclosure of his agency," we affirmed the trial court's factual finding that the defendant found responsible for the unpaid bills had failed to disclose his agent status. *Id.* at 207, 35 A.2d at 858; *see also Atlantic Salmon v. Curran*, 32 Mass.App.Ct. 488, 591 N.E.2d 206, 207 (1992) (establishing personal liability of an agent who purported to be a representative of a non-existent corporation, which had incurred substantial debt owed to the plaintiffs).

[¶ 23] In the present case, Derr organized a corporation called JCDER, Inc., which he used to operate his construction business. Both Derr, and, apparently, JCDER, Inc. acted under the assumed name J.D. Construction Co., Inc. Derr signed the contract on behalf of J.D. Construction, hired the subcontractors, and was purported to be the contact-person for the project, although he was not available to the Treadwells. Like *Saco Dairy* or *Atlantic Salmon*, Derr's use of an assumed trade name was not sufficient to disclose his agency relationship with JCDER, Inc. JCDER, Inc. was therefore an unidentified or partially disclosed principal. As a matter of law, Derr is personally liable for performance of contracts entered into as agent for the non-existent J.D. Construction, Co., Inc. or the undisclosed principal JCDER, Inc.

## III. CROSS–APPEAL

[¶ 24] In the cross-appeal, the defendants argue that because Derr never performed and the Treadwells never paid for the sheetrock work, the trial court erred in including the $21,633 cost for installation of the sheetrock as part of the damages calculation. The Treadwells contend that the sheetrock installation was part of the contract, and therefore, they were entitled to be reimbursed for its completion.

[¶ 25] We review a trial court's damages calculation to see whether there is competent evidence in the record to support the award. *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 15, 834 A.2d 947, 952.

[¶ 26] "The measure of recovery for defective or incomplete performance of a construction contract is the difference in value between the value of the performance contracted for and the value of the performance actually rendered." *VanVoorhees v. Dodge*, 679 A.2d 1077, 1081 (Me.1996); *see also Parsons v. Beaulieu*, 429 A.2d 214, 217 (Me.1981). This recovery may include the cost to complete the house and repair the defects. *See Kleinschmidt v. Morrow*, 642 A.2d 161, 165 (Me.1994); *Marchesseault v. Jackson*, 611 A.2d 95, 98 (Me.1992); *see also* 11 Joseph M. Perillo, CORBIN ON CONTRACTS § 60.1 at 606 (revised ed. 2005) ("[f]or a breach by defective construction, whether it is partial or total, and for a total breach by refusal and failure to complete the work, the injured party can usually get a judgment for damages measured by the reasonable cost of reconstruction and completion in accordance with the contract"). However, "as against the cost of completion the owner must deduct the part of the price that he has not yet paid." 11 Joseph M. Perillo, CORBIN ON CONTRACTS § 60.1 at 608.

[¶ 27] In *Kleinschmidt*, the plaintiff entered into a contract with the defendant contractor to build a home. 642 A.2d at 163. The contract price was $68,200 and the plaintiff gave the defendant a $20,000 deposit. *Id.* After finishing half of the work and depleting the deposit, the defendant refused to keep working until the plaintiff paid him more money, even though there were no provisions in the contract for progress payments. *Id.* The plaintiff paid an additional $2000, but eventually had to hire a different contractor to finish the house. *Id.* Because of defects in the construction, the new contractor had to redo most of the work, which in addition to fixing the home, cost the plaintiff $47,500. *Id.* The trial court awarded the plaintiff $2300, which was the difference between the total cost to the plaintiff, $70,500, and the contract price, $68,200. *Id.* at 165. We affirmed, holding that the evidence supported the trial court's calculation. *Id.*

[¶ 28] Here, the trial court found, "Plaintiffs are entitled to damages for repair of the defective work and for costs incurred in completing aspects of the contract for which they had already paid." The court essentially held the defendants responsible for the amount the Treadwells had to pay both to correct the defective framing and to complete the sheetrock work.

[¶ 29] As part of that amount, the court awarded the Treadwells the cost of the sheetrock installation. Although the Treadwells had paid Derr approximately $91,000 for his work, there was no evidence that Derr had performed any of the sheetrock work. There was also no evidence in the record that the $91,000 the Treadwells had paid included payment for materials for the sheetrock installation.

[¶ 30] The Treadwells are entitled to the amount they had to pay to the drywall contractor because that work was more difficult than usual due to the defects caused by Derr's poor quality work. How-

ever, because the Treadwells never paid Derr for the sheetrock installation, the RESTATEMENT and *Kleinschmidt* indicate that the trial court here should have subtracted Derr's contract price of the sheetrock work, $11,025, from the higher amount, $21,633, that the Treadwells paid the drywall contractor due to the necessity to repair and replace defective workmanship.

The entry is:

Judgment vacated. Remanded to the Superior Court to reduce damages awarded by the sum of $11,025 and to award the remaining damages as the joint and several responsibility of J.D. Construction Co., Inc., JCDER, Inc., and Jesse Derr.