2012 ME 29

**A.E. ROBINSON OIL CO., INC.**

**v.**

**COUNTY FOREST PRODUCTS, INC., et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 30, 2012.
Decided: March 8, 2012.

Russell B. Pierce, Esq., and David A. Goldman, Esq., Norman, Hanson & De-Troy, LLC, Portland, for appellants County Forest Products, Inc. and Galen R. Porter, Jr.

Curtis E. Kimball, Esq., and Brent A. Singer, Esq., Rudman Winchell, Bangor, for appellee A.E. Robinson Oil Co., Inc.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1]  County Forest Products, Inc. and Galen R. Porter Jr. appeal from the District Court's (Dover–Foxcroft, *Stitham, J.*) judgment in favor of A.E. Robinson Oil Co., Inc. on A.E. Robinson's complaint seeking payment on a fuel products account.  Porter and County Forest challenge the trial court's decision to hold them jointly and severally liable for the debt as well as its award of financing charges and attorney fees.  We modify the judgment to remove the award of attorney fees and affirm as modified.

## I.  BACKGROUND

[¶ 2]  We present the evidence and the trial court's findings in the light most favorable to A.E. Robinson as the prevailing party.  *See Lyman v. Huber*, 2010 ME 139, ¶ 2, 10 A.3d 707.  Porter is the sole shareholder in County Forest, a corporation that has existed since 1986.  In 2004, Porter spoke with a vice president of A.E. Robinson at a charity golf event.  Subsequently, the two orally agreed that A.E. Robinson would begin delivering fuel products to G.R. Porter & Sons,[1] another corporation with which Porter was involved.  In 2005, Porter began operating a fuel delivery business as Porter Cash Fuel but never registered that name with the Secretary of State.  Porter testified that he intended to operate Porter Cash Fuel as a trade name of County Forest and not as a separate sole proprietorship.  The record reveals that Porter ordered fuel and gas over the phone from A.E. Robinson in a series of transactions that continued for

---

1.  G.R. Porter & Sons was named as a defendant in this case, but the trial court granted its unopposed motion to dismiss it from the case prior to trial.

three years and eventually gave rise to this suit.

[¶ 3] Several types of writings confirmed these oral agreements. Within two days after A.E. Robinson delivered its products, it mailed invoices directed to Porter Cash Fuel. A.E. Robinson also regularly sent Porter Cash Fuel statements of account. Further, an authorization for direct payment listed "Porter Cash Fuel" and bore two signatures, one of which belonged to Porter. None of the writings made any reference to County Forest and none indicated the corporate status of Porter Cash Fuel. All of A.E. Robinson's dealings were with Porter or with Porter Cash Fuel; it had no reason to believe it was dealing with County Forest.

[¶ 4] Over the years of this business relationship, A.E. Robinson added terms to the bottom of its invoices asserting its entitlement to financing charges, collection costs, attorney fees, and court costs. Although Porter never expressly agreed to these terms, when Porter paid sporadically, some of the payments were applied to financing charges, and Porter never complained. Ultimately, the business relationship deteriorated, and A.E. Robinson refused to deliver any more products. A.E. Robinson sued County Forest and Porter seeking payment on the account. Following a non-jury trial, the court entered judgment for A.E. Robinson jointly and severally against County Forest and Porter in the amount of the invoices plus financing charges and attorney fees. County Forest and Porter appeal from the entry of that judgment.

## II. DISCUSSION

[¶ 5] First, County Forest and Porter contend that the trial court erred in holding them jointly and severally liable for the debt. Porter testified at trial that he intended to operate Porter Cash Fuel as a trade name of County Forest, and he did not establish a separate sole proprietorship unrelated to County Forest. By operating under an unregistered assumed or trade name, Porter violated Maine corporation law. *See* 13-C M.R.S. §§ 204, 404(6) (2011).

[¶ 6] Porter became personally liable, as did County Forest, based on principles of agency. In his transactions with A.E. Robinson, Porter, through Porter Cash Fuel, was acting as an agent for an undisclosed principal—County Forest. The Restatement (Third) of Agency, which we cited with approval in *Treadwell v. J.D. Construction Co.*, 2007 ME 150, ¶¶ 20, 30, 938 A.2d 794, states that "[w]hen an agent acting with actual authority makes a contract on behalf of an undisclosed principal ... unless excluded by the contract, the principal is a party to the contract," as is the agent. Restatement (Third) of Agency § 6.03 (2006). This rule is justified because "a third party's reasonable expectations will receive adequate protection only if an undisclosed principal is liable on a contract made on its behalf by an agent." *Id.* cmt. b. Notably, however, "[a]n undisclosed principal only becomes a party to a contract when an agent acts on the principal's behalf in making the contract." *Id.* cmt. c.

[¶ 7] Here, Porter testified that he intended to operate Porter Cash Fuel as a trade name of County Forest. His brief to this Court reiterates that this was his intent. This testimony establishes that he was not operating Porter Cash Fuel as a separate sole proprietorship, which might have permitted County Forest to escape liability. Because Porter operated Porter Cash Fuel as an agent for County Forest without disclosing that County Forest was the principal, he and County Forest are parties to the contract. *See* Restatement (Third) of Agency § 6.03. This result is

consistent with the outcome of our prior cases. *Treadwell*, 2007 ME 150, ¶¶ 19–23, 938 A.2d 794; *Me. Farmers Exch. v. McGillicuddy*, 1997 ME 153, ¶¶ 2–4, 10–11, 697 A.2d 1266; *Estate of Saliba v. Dunning*, 682 A.2d 224, 226 (Me.1996); *see also Bank of Am., N.A. v. Barr*, 2010 ME 124, ¶¶ 26–27, 9 A.3d 816 (holding that a sole proprietor was personally liable for a contract she made before incorporating her business).

[¶ 8] Our cases from an earlier era endorsed the election rule, which requires a third-party to elect between the principal and the agent in obtaining relief. *See, e.g., Libby v. Long*, 127 Me. 293, 296, 143 A. 66 (1928). This approach has not been the prevailing view for decades. *See* Restatement (Third) of Agency § 6.09 reporter's note c (collecting cases from the 1980s rejecting the rule). The "satisfaction" rule, in which only the satisfaction of a judgment will discharge the liability of an undisclosed principal or an agent who contracted on behalf of an undisclosed principal, "is consistent with the contemporary view that a judgment against one person who is liable for a loss does not terminate the claim that the injured party may have against another party who may also be liable for the loss." *Id.* cmt. c. To move our jurisprudence to the contemporary view, *Libby* and its progeny are overruled. Thus, the trial court properly held Porter and County Forest jointly and severally liable.[2]

■ [¶ 9] Second, County Forest and Porter assert that the trial court erred in interpreting section 2–207 when it enforced the financing charges and attorney fees clauses added to A.E. Robinson's invoices over the course of the business rela-tionship. We review the trial court's interpretation of a statute de novo. *Bonney v. Stephens Mem'l Hosp.*, 2011 ME 46, ¶ 11, 17 A.3d 123. In a transaction between merchants for the sale of goods, additional terms contained within a written confirmation of an oral agreement become part of the contract unless those additional terms materially alter the oral agreement. 11 M.R.S. § 2–207(2)(b) (2011); *see also Redlon's Inc. v. Gilman, Inc.*, 485 A.2d 661, 662 (Me.1984). The test for materiality is objective. 1–2 Murray on Contracts § 50[D][1] (LEXIS 2011). An additional term materially alters the oral agreement if it would result in unreasonable surprise or hardship to the buyer. U.C.C. § 2–207 cmts. 4–5, 11 M.R.S.A. § 2–207 (1995). Even additional terms that materially alter the oral agreement become part of the contract, however, if they are consistent with trade usage or the parties' course of performance. 11 M.R.S. §§ 1–1201(3), 1–1303 (2011); James J. White & Robert S. Summers, 1 Uniform Commercial Code § 1–3(6) at 77 (5th ed.2006).

■ [¶ 10] Here, the court correctly awarded financing charges to A.E. Robinson because within the meaning of section 2–207(2)(b), the addition of a financing charge does not materially alter an oral agreement between merchants. *See* U.C.C. § 2–207 cmt. 5, 11 M.R.S.A. § 2–207. In addition, the course of performance followed by these parties included the payment of financing charges. A provision requiring payment of attorney fees in the event of a breach, however, does materially alter an oral agreement unless such charges are consistent with trade usage or the parties' course of performance. *See*

---

**2.** We do not reach the parties' arguments regarding the trial court's interpretation of their stipulations at trial because, on the facts of this case, County Forest and Porter are jointly and severally liable as a matter of law.

*Johnson Tire Serv., Inc. v. Thorn, Inc.,* 613 P.2d 521, 521–23 (Utah 1980).[3] The record does not support a finding that the addition of the attorney fees provision was consistent with either trade usage or the parties' course of performance. Absent such evidence, the trial court erred in awarding attorney fees to A.E. Robinson.

The entry is:

Judgment modified to remove the award of attorney fees. As modified, judgment affirmed.

---

**3.** We acknowledge a line of cases holding that materiality is a question of fact. *See, e.g., Am. Ins. Co. v. El Paso Pipe & Supply Co.,* 978 F.2d 1185, 1189–192 (10th Cir.1992) (remanding the case for a trial court to determine, as a matter of fact, whether the addition of an attorney fees clause was material); *Comark Merch., Inc. v. Highland Grp., Inc.,* 932 F.2d 1196, 1202–03 (7th Cir.1991) (holding that a trial court did not clearly err in finding that an attorney fees clause materially altered a contract). We decline to follow this reasoning in interpreting section 2–207. The law already accommodates the factual nuances of a particular dispute by permitting adjudication of the factual questions surrounding trade usage and the parties' course of performance.