NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 35

No. 2019-166

| | |
|---|---|
| Bourdeau Bros., Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Civil Division |
| | |
| Boissonneault Family Farm, Inc. et al. | March Term, 2020 |

Robert A. Mello, J.

Arend R. Tensen of Cullenberg & Tensen, PLLC, Lebanon, New Hampshire, for
  Plaintiff-Appellant.

Jay Boissonneault, Pro Se, St. Albans, Defendant-Appellee/Cross-Appellant.


PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.    **COHEN, J.**   This is a collection action brought by a grain supplier against dairy farmers for unpaid grain bills.  Plaintiff, the prevailing party below, appeals the trial court's denial of its request for attorney's fees.  Plaintiff argues that it was entitled to recover attorney's fees based on a term contained in invoices that it provided to defendants each time it delivered grain.  Plaintiff argues that under 9A V.S.A. § 2-207, the term became part of the parties' contract when defendants failed to object to it within a reasonable time.  Defendants cross-appeal, arguing that the trial court improperly calculated damages and erred by dismissing their counterclaim and finding defendant Jay Boissonneault personally liable.  We remand for the trial court to reconsider whether plaintiff is entitled to attorney's fees, but otherwise affirm the judgment.

¶ 2.     Plaintiff Bourdeau Bros., Inc. is a Vermont company that sells agricultural supplies, feed, and chemicals. Defendants operate a dairy farm in Georgia, Vermont. In July 2016, plaintiff sued defendant Boissonneault Family Farm, Inc. (BFF) for amounts owed for grain delivered by plaintiff to the farm. Plaintiff subsequently amended its complaint to add Jay and Cathy Boissonneault as co-defendants. In their answer, defendants denied that Cathy Boissonneault or BFF had done business with Bourdeau Bros., Inc. Defendants moved to dismiss Cathy Boissonneault and BFF as defendants. The court denied the motion. In February 2018, defendants filed a counterclaim alleging that plaintiff owed defendants $16,000 for water plaintiff took from defendants' pond.

¶ 3.     A two-day bench trial took place in March 2019. At the conclusion of the trial, the court dismissed plaintiff's claims against Cathy Boissonneault. The court found that beginning in 2012, defendants Jay Boissonneault and BFF had an oral agreement with plaintiff to purchase grain. Each time plaintiff delivered grain, it presented an invoice to defendants. Defendants consistently paid the amounts indicated in the invoices until 2015, when defendants stopped paying. The court found that defendants owed plaintiff $27,564.97 for grain delivered in 2015, including interest of eighteen percent per year. The court denied plaintiff's request for attorney's fees despite language in the invoices stating that plaintiff would be entitled to such fees in the event of a collection action. The court explained that the attorney's fees provision was a material alteration to the parties' oral agreement to which defendants had not agreed. The court also dismissed defendants' counterclaim for damages for water taken by plaintiff.

¶ 4.     Both parties appealed. Plaintiff argues that the court erred in denying its request for attorney's fees, which it asserts were contractually required. Defendants deny that they owe attorneys' fees. They also challenge the court's calculation of damages and claim that it erred in dismissing their counterclaim and in finding defendant Jay Boissonneault personally liable.

¶ 5.    On appeal, we review the trial court's factual findings in the light most favorable to the prevailing party. Rubin v. Sterling Enterprises, Inc., 164 Vt. 582, 588, 674 A.2d 782, 786 (1996). We will affirm the court's findings of fact if there is credible evidence in the record to support them, even if substantial contradictory evidence exists. Lofts Essex, LLC v. Strategis Floor & Decor Inc., 2019 VT 82, ¶ 17, __ Vt. __, 224 A.3d 116. "Where the trial court has applied the proper legal standard, we will uphold its conclusions of law if reasonably supported by its findings." Highgate Assocs., Ltd. v. Merryfield, 157 Vt. 313, 315-16, 597 A.2d 1280, 1281-82 (1991).

¶ 6.    We begin by addressing plaintiff's claim that the court erred in denying its request for attorney's fees. The general rule is that attorney's fees are not recoverable "absent a statutory or contractual exception." DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 246, 776 A.2d 413, 419 (2001). Plaintiff argues that it was entitled to attorney's fees based on the following provision that appeared at the bottom of each invoice it presented to defendants:

> Terms: Net 30 days, a finance charge, based on the following periodic rates: 1½ % per month (18 annual percentage rate) will be applied to any past due balance which was billed 30 days or more prior to the closing date of this statement . . . . A customer will be responsible for reasonable attorney fees and costs if collection of the amount becomes necessary.

Plaintiff argues that under § 2-207 of the Uniform Commercial Code, these additional terms formed part of its agreement to sell grain to defendants. Plaintiff claims that defendants indicated their assent to the terms by paying interest on past-due amounts without objection. The trial court agreed that plaintiff was entitled to collect interest based on the above provision because defendants had never objected and because plaintiff would be entitled to collect statutory interest in the absence of the provision. However, it denied plaintiff's request for attorney's fees, stating: "We follow in this country the American Rule under which all parties are responsible for their own

3

attorney's fees. In order for there to be an exception, the parties have to agree otherwise. So that's a material alteration . . . ."

¶ 7. Section 2-207 of the Uniform Commercial Code (UCC), as enacted in Vermont, provides in part:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: . . .
>
> (b) they materially alter it . . . .

9A V.S.A. § 2-207(1)-(2)(b). This Court has never had occasion to interpret § 2-207. The proper interpretation of the statute is a legal question that we review without deference to the trial court. See In re Treetop Dev. Co. Act 250 Dev., 2016 VT 20, ¶ 9, 201 Vt. 532, 143 A.3d 1086.

¶ 8. As a preliminary issue, we must determine whether the parties qualify as "merchants" to whom § 2-207 applies. For purposes of the UCC, a merchant is defined in relevant part as "a person who deals in goods of the kind or otherwise by his or her occupation holds himself or herself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." 9A V.S.A. § 2-104(1). Plaintiff is plainly a merchant for purposes of this case because it deals in grain, which is the subject of the contract at issue. Similarly, we conclude that defendants Jay Boissonneault and BFF are merchants in this context because they have specialized knowledge of grain purchasing acquired in the course of their business as dairy farmers. See Aube v. O'Brien, 140 Vt. 1, 4, 433 A.2d 298, 300 (1981) (holding that bonded cattle dealer and dairy farmer were both merchants under § 2-104(1)); see also In re Montagne, 431 B.R. 94, 113 (Bankr. D. Vt. 2010) ("A dairy farmer is a merchant in all aspects of his mercantile capacity, i.e., with respect to goods for dairy farming operations, but not for every purchase of goods."). The trial

4

court therefore correctly concluded that § 2-207(2)(b) is applicable to defendants' agreement to purchase grain from plaintiff.

¶ 9. However, we cannot affirm the trial court's ruling that the invoice term allowing plaintiff to recover reasonable attorney's fees in the event of a collection action was, as a matter of law, a material alteration to the parties' contract. As discussed further below, we conclude that the determination of whether an additional term materially alters a contract under § 2-207 requires a factual inquiry into the particular circumstances of each case. Because the trial court made no findings to support its conclusion, we must remand for further proceedings.

¶ 10. The UCC does not define what constitutes a material alteration. However, Official Comment 4 to § 2-207 lists several examples of clauses "which would normally 'materially alter' the contract and so result in surprise or hardship if incorporated without express awareness by the other party," such as a disclaimer of standard warranties. 9A V.S.A. § 2-207 cmt. 4. Comment 5 lists examples of terms "which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given," such as interest on past-due amounts. Id. cmt. 5. Attorney's fees are not on either list.

¶ 11. Based on the language of Comments 4 and 5, most courts agree that an additional term is a material alteration if it would result in unreasonable surprise or hardship if incorporated without the buyer's express awareness.[1] See, e.g., Am. Ins. Co. v. El Paso Pipe & Supply Co., 978 F.2d 1185, 1190 (10th Cir. 1992); Luedtke Eng'g Co. v. Ind. Limestone Co., 740 F.2d 598, 600 (7th Cir. 1984); St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc., 687 F. Supp. 820, 827 (S.D.N.Y. 1988); Palmer G. Lewis Co. v. ARCO Chem. Co., 904 P.2d 1221, 1229 (Alaska 1995); C9 Ventures v. SVC-W., L.P., 136 Cal. Rptr. 3d 550, 568 (Cal. Ct. App. 2012); Oakley Fertilizer,

---

[1] One of the express purposes of the Vermont UCC is "to make uniform the law among the various jurisdictions." 9A V.S.A. § 1-103(a)(3). Accordingly, it is appropriate for this Court to examine how other courts have interpreted § 2-207 to aid our review of that provision.

5

Inc. v. Cont'l Ins. Co., 276 S.W.3d 342, 348 (Mo. Ct. App. 2009); Stanley-Bostitch, Inc. v. Regenerative Envtl. Equip. Co., 786 A.2d 1063, 1066 (R.I. 2001). We find the majority view to be persuasive. Accordingly, we hold that the test for a material alteration under 9A V.S.A. § 2-207 is whether the additional term would result in surprise or hardship to the non-assenting party.

¶ 12. Because the law presumes consent to an additional term if no objection is made within a reasonable time, see 9A V.S.A. § 2-207 cmt. 6, the non-assenting party bears the burden of demonstrating that the additional term would result in surprise or hardship and so constitutes a material alteration to the contract. Comark Merch., Inc. v. Highland Grp., Inc., 932 F.2d 1196, 1201 (7th Cir. 1991) (explaining that "[a]s between merchants, paragraph 2-207(2)(b) presumes the inclusion of the additional clause unless one of the three exceptions is met," so party opposing inclusion bears burden of proving exception); Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 223 (2d Cir. 2000) (noting that nearly every court to consider issue has held that party opposing inclusion of additional terms shoulders burden of proof, and listing cases).

¶ 13. Furthermore, we conclude, in accordance with the prevailing view, that "whether an additional term in a written confirmation constitutes a 'material alteration' is a question of fact to be resolved by the circumstances of each particular case."[2] N & D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722, 726 (8th Cir. 1976); see also Am. Ins. Co., 978 F.2d at 1190 (noting general agreement among jurisdictions that whether addition is material alteration is question of fact). This

---

[2] The clauses listed in Comment 4 to § 2-207 and certain other common boilerplate clauses have been held by some courts to be material alterations as a matter of law. See, e.g., Rottinghaus v. Howell, 666 P.2d 899, 904-05 (Wash. Ct. App. 1983) (affirming trial court's conclusion that disclaimer of standard warranties was material alteration as matter of law, citing Comment 4); Resch v. Greenlee Bros. & Co., 381 N.W.2d 590, 593 (Wis. Ct. App. 1985) (holding indemnification clause shifting liability to buyer for claims arising from product purchased was material alteration as matter of law). Because this case does not involve one of these types of clauses, we do not address whether this approach is appropriate. We note that the modern trend appears to be to consider the facts of each case. See T. Davis, U.C.C. Section 2-207: When Does an Additional Term Materially Alter a Contract?, 65 Cath. U. L. Rev. 489, 509 (2016) (noting departure from earlier approach).

approach makes sense because the materiality of an alteration depends largely on the subjective, and objectively reasonable, expectations of the parties in the context of a particular transaction or business relationship. Ebasco Servs. Inc. v. Pa. Power & Light Co., 402 F. Supp. 421, 442-43 (E.D. Pa. 1975) (explaining Official Comment 4 "indicates to us that the materiality of a change is to be judged in large part by the expectations of the parties involved in the transaction," which "is a determination uniquely within the province of a fact finder"). Thus, relevant factors to the materiality determination may include the prior course of dealing between the parties, the number of written confirmations provided by plaintiff, and whether the term reflects industry custom. Am. Ins. Co., 978 F.2d at 1191.

¶ 14. The majority of courts faced with challenges under § 2-207(2)(b) to attorney's fees provisions contained in written confirmations between merchants have applied this case-by-case analysis.[3] Comark, 932 F.2d at 1203 n.8 (explaining that courts tend to analyze materiality of attorney's fees provisions as factual question, and listing cases). In cases where non-assenting parties failed to demonstrate surprise or hardship, courts have upheld attorney's fees provisions. See Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 708 (2d Cir. 2007) (affirming enforcement of attorney's fees provision where defendants failed to offer evidence to show objective or subjective surprise). But where non-assenting parties have shown that attorney's fees

---

[3] A few courts have held that an attorney's fees provision is a material alteration as a matter of law. See A.E. Robinson Oil Co. v. Cty. Forest Prods., Inc., 2012 ME 29, ¶ 10 n.3, 40 A.3d 20; Johnson Tire Serv., Inc. v. Thorn, Inc., 613 P.2d 521, 523 (Utah 1980). These cases contain little analysis and we find them to be unpersuasive. In Herzog Oil Field Serv., Inc. v. Otto Torpedo Co., 570 A.2d 549, 551-52 (Pa. Super. Ct. 1990), a Pennsylvania appellate court held that a clause awarding the seller attorney's fees of 25% of the balance owed in the event of a collection action was a material alteration because attorney's fees provisions were uncommon and were usually less than 25% of the balance owed and the provision changed the buyer's financial obligation "to a material degree." However, the court cited no authority or facts to support these assertions. We believe the majority view—that the materiality determination must be supported by a factual analysis of the particular case—is the better-reasoned approach. See Rocheux Int'l of N.J., Inc. v. U.S. Merchs. Fin. Grp., Inc., 741 F. Supp. 2d 651, 686 (D.N.J. 2010) (criticizing Herzog and Johnson Tire).

provisions resulted in surprise or hardship, courts have declined to enforce them. See Comark, 932 F.2d at 1202 (affirming district court's conclusion that attorney's fees term unfairly surprised defendant, and therefore materially altered contract, in absence of evidence that such fees were expected under industry custom or prior dealing between parties).

¶ 15. We adopt the majority approach and hold that the question of whether additional terms, including attorney's fees provisions, materially alter a sales contract between merchants under § 2-207(2)(b) is a question of fact to be determined under the circumstances of the particular case. The trial court in this case concluded that the attorney's fees provision was a material alteration as a matter of law and therefore made no findings to support its conclusion. Accordingly, we must reverse the court's decision on this issue and remand for it to make findings. Parker v. Parker, 2012 VT 20, ¶ 13, 191 Vt. 222, 45 A.3d 48 (explaining that this Court will remand for additional findings if findings are inadequate to permit review of trial court decision).

¶ 16. With respect to their cross-appeal, defendants' first argument appears to be that the court erroneously included sums due for grain purchased in 2014 in its damages award, when plaintiff only sought payment for grain purchased in 2015. This argument is without merit. The billing statements admitted into evidence below indicate that at the beginning of 2015, defendants owed $5669 for grain delivered in 2014 and that defendants paid for this grain in January 2015. The damages awarded by the court did not include this amount. We therefore affirm the court's calculation of damages.

¶ 17. Defendants next argue that the trial court erred in dismissing their counterclaim for amounts allegedly owed by plaintiff for water it removed from a pond on the farm rented by defendants. We see no error. An agricultural tenant generally does not have the right to sell natural resources that are on the land. See Univ. of Vt. & State Agric. Coll. v. Ward, 104 Vt. 239, 158 A. 773, 784 (1932) (holding that durable lease permitting tenant to take wood for personal use did not give tenant or his administrator right to sell timber from land; severance of wood from land

8

converted it into personal property, which was owned by landlord). The trial court found that the terms of the lease between BFF and the owner of the farmland did not give BFF the exclusive right to control the water in the pond. The court further found that landowner expressly permitted plaintiff and others to take water from a fire hydrant connected to the pond throughout the course of the lease. The record supports these findings. The lease contains no provision granting defendants exclusive control over the water in the pond. Plaintiff's representative and landowner both testified that landowner permitted plaintiff to take water from the fire hydrant to use in spraying landowner's and others' fields. Landowner testified that the hydrant was paid for by the State of Vermont and installed by the town for use by its fire department. He had never charged anyone for its use. This evidence supports the court's findings, which in turn support its conclusion that defendants were not legally entitled to recover damages for water plaintiff removed from the pond. The court did not err in dismissing defendants' counterclaim.

¶ 18. Finally, defendant Jay Boissonneault argues that he is only an agent for BFF and is not liable for the company's debts, and therefore the court erred in holding him personally liable for damages awarded to plaintiff. Defendant invited the alleged error by taking the position below that he, and not the corporation, was responsible for the grain orders. See State v. Longe, 170 Vt. 35, 44 n.1, 743 A.2d 569, 575 n.1 (1999) ("The invited error doctrine holds that an action induced by an appellant cannot ordinarily be a ground of error."). We therefore decline to disturb the court's decision that defendant Jay Boissonneault is personally liable.

The matter is remanded for further proceedings on the issue of whether plaintiff is entitled to attorney's fees. The judgment is otherwise affirmed.

FOR THE COURT:

_____

Associate Justice

9